Filed 3/1/23  P. v. Simmons CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C094880 |
| Plaintiff and Respondent, | (Super. Ct. No. CH037835) |
| v. | |
| MELVIN JOSEPH SIMMONS, | |
| Defendant and Appellant. | |

Defendant Melvin Joseph Simmons pled to custodial possession of a weapon for which he received a one-year consecutive sentence to the prison term defendant was then serving.  On appeal, defendant brings two separate but related claims.  First, defendant complains the record contains substantial evidence of his incompetence to stand trial, and thus the trial court violated due process by failing to suspend proceedings and conduct a competency hearing.  In light of this alleged failure, defendant requests we reverse the judgment and remand for a competency hearing.  Second, defendant reasons that because he was incompetent to stand trial, he was also incompetent to represent himself.

1

However, defendant does *not challenge* whether his waiver under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) was knowing and voluntary or argue for the application of the heightened state standard for competency to represent oneself. (*People v. Johnson* (2012) 53 Cal.4th 519, 530.) Accordingly, the *only issue before this court* is whether substantial evidence supports defendant's allegations of incompetence to stand trial.

Having reviewed the record and the parties' arguments, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 5, 2020, defendant was charged with custodial possession of a weapon and it was alleged that he had a prior strike. On June 26, 2020, defendant refused to leave his cell to attend his arraignment and also refused to speak with his attorney. At the next Zoom hearing, defendant objected to the appointment of counsel and to not having a public forum. The matter was put over for a *Faretta* hearing, and defendant was provided a form *Faretta* application, which he later filed.

On September 18, 2020, the trial court heard defendant's *Faretta* motion via Zoom. At the outset of the hearing, defendant objected that the complaint did not utilize his full name and reiterated his complaint that the proceedings violated his "constitutional right to an open court in a public forum." The court then confirmed defendant's understanding of his rights, including his right to subpoena and cross-examine witnesses, to a speedy trial, and to be represented by an attorney and to waive that right. Defendant was 56 years old, had obtained a GED, and was a certified paralegal (a certification he received around 2001 as a result of a correspondence course). Defendant informed the court that he had represented himself one other time and that case ended in a plea agreement. Defendant confirmed he understood there were disadvantages to representing himself, and the court enumerated at length the various tasks he would be expected to perform. Defendant, of his own accord, confirmed he would have access to a legal runner for filing.

2

The trial court then explained the allegations defendant was facing and his potential sentencing exposure of up to 48 months for the custodial possession, which could be doubled because of the prior strike. The court further explained it was questioning defendant at the hearing in response to defendant's "nonsensical items" from his *Faretta* application. Defendant understood that if his motion was granted, he would proceed without the assistance of counsel. Defendant "reject[ed]" the court's advice not to represent himself and declined the court's invitation to postpone his self-representation until after he had at least met with his court-appointed attorney.

Ultimately, the court found defendant had "the mental acuity in which to represent [himself] in th[ose] proceedings at th[at] time." However, the court warned that should defendant fail to comport himself and abuse the dignity of the court, then the court would revoke his self-representation. Accordingly, the court granted defendant's request to represent himself and released his appointed counsel.

On December 1, 2020, defendant made numerous filings in defense of his action, including (1) a motion to dismiss; (2) a document entitled "compulsory counterclaim actions in quasi rem" (capitalization omitted), alleging misconduct by officers at the prison, the district attorney, and the special prosecutor; (3) memoranda in support of the propriety of defendant's counterclaims under a theory that government agents had acted in concert and in violation of antitrust laws; and (4) a notice of hearing and memo, which we understand to request the counterclaim be heard concurrent with his criminal matter. These motions were continued so the People could be served and afforded an opportunity to respond. They were ultimately denied, and defendant attempted multiple times to appeal these rulings during ongoing proceedings but was notified that these notices of appeal were inoperative.

On February 4, 2021, defendant refused to exit his cell for his preliminary hearing, resulting in a one-day continuance and a warning that if defendant failed to cooperate, his self-representation status could be revoked. Defendant attended court the next day,

3

rejected the People's offer of a four-year sentencing lid, and insisted upon proceeding with the preliminary hearing.  Thereafter, the court conducted the preliminary hearing and held defendant to answer.  During this hearing, defendant cross-examined the witness.  He then explained his defense was that he was "unlawfully" incarcerated and had been "placed in High Desert to be murdered."  The court encouraged defendant to speak with the People about possibly resolving the case and reminded him he could request an attorney.  Defendant responded he had the money to hire an attorney if he elected to do so.  At the conclusion of the hearing, defendant filed a motion to disqualify Judge Tony Mallery for prejudice, which was granted.

On March 3, 2021, defendant filed a motion to dismiss, supporting memorandum, and an affidavit asserting error at the preliminary hearing, which was opposed by the People.  Thereafter, the trial court dismissed the criminal action without prejudice because of the People's failure to file an information within statutory limits following the preliminary hearing.  However, the criminal action was reinstated on March 17, 2021, after it was discovered that the People had, in fact, timely filed an information.

At defendant's arraignment on the information, defendant objected to Judge Mark Nareau presiding over the proceedings, complaining he had previously filed a complaint against him.  Judge Nareau had not been aware of his complaint, but nonetheless encouraged defendant to file complaints if he felt he was being treated unfairly.  The court proceeded with the arraignment, and ultimately entered defendant's plea of not guilty.

Defendant refused to consent to a Zoom appearance on April 15, 2021, requiring the matter be put over so he could appear in person.  The hearing on defendant's motion to dismiss took place the next day.  Defendant argued at length that (1) the court was acting in excess of its jurisdiction and (2) against prosecution of the case on various theories of dubious application.  The People submitted on the papers, and the trial court denied defendant's motion to dismiss.

4

Thereafter, defendant filed a motion for change of venue and supporting papers, which the People opposed. At the outset of the venue hearing, the trial court conferred with defendant's cousin Greg Rossignoa, who was present in court. Rossignoa expressed concern that defendant had a "mental thing that's going on" and that he needed counseling and to be returned home having already served 36 years on an eight-year-to-life sentence. In response, the court explained the purpose of the hearing was to hear defendant's motion and the appropriate disposition in the case would be for a later hearing. Defendant concurred, stating, "All due respect, Your Honor, I respect and appreciate the words and wisdom of my cousin, but this is not the issue."

The trial court then denied defendant's motion, finding (1) it would not issue an order to remove the matter to federal court and (2) that defendant had not demonstrated a need to change the venue within the California courts. In response to the court's inquiry impliedly suggesting defendant accept assistance from an attorney, defendant stated, "No, I do not wish to be assisted by an attorney because the attorney works for the State of California and he represents the interests of the State of California and not my individual interests and personal liberty." Defendant objected that he had not yet received discovery from the People, and the court directed the People to provide an additional copy of the discovery to defendant. The court noted defendant's objection to the continuance of the proceedings.

Defendant then filed two notices of removal on June 8, 2021, and June 10, 2021. On June 23, 2021, defendant filed an opposition to the People's motions in limine. The next day, defendant filed a motion seeking the removal of handcuffs, shackles, leg irons, and other restraints, again making arguments of dubious relevance.

At the June 29, 2021 trial setting conference, the assigned judge overruled defendant's objection to his hearing the matter and set the matter for a trial lasting three to five days to begin on July 19, 2021. On July 6, 2021, defendant filed a motion to compel discovery and supporting papers.

5

Thereafter, on July 19, 2021, defendant rejected the People's offer to settle the case in exchange for a sentence of four years, and the matter was continued for one day because of a power outage. On July 20, 2021, defendant agreed to resolve the case by pleading no contest to custodial possession of a weapon. In exchange, he would receive a midterm prison sentence of three years and the People would move to dismiss the strike allegation in the interests of justice. Through operation of resentencing rules, defendant would ultimately receive a sentence of one year consecutive to other determinate terms previously imposed, which would be reimposed.

Defendant refused to complete the plea form and the trial court agreed to take a verbal plea, proceeding to confirm the information from the plea agreement form orally on the record. Defendant agreed he had possessed the weapon, although he contested whether his incarceration was lawful and asserted he had a right to self-defense. Thereafter, the trial court accepted defendant's no contest plea and, with defendant's consent, immediately imposed sentence in accordance with the plea agreement. Defendant timely appealed and his certificate of probable cause request was granted. Appellate briefing in this matter was completed on December 16, 2022.

## DISCUSSION

The sole issue before this court is whether substantial evidence exists from which the trial court could have determined that defendant was incompetent to stand trial. We conclude it does not.

"[T]he conviction of an accused person while he is legally incompetent violates due process." (*Pate v. Robinson* (1966) 383 U.S. 375, 378.) "A defendant is incompetent to stand trial if he or she lacks a ' "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . a rational as well as a factual understanding of the proceedings against him." ' " (*People v. Rogers* (2006) 39 Cal.4th 826, 846-847 (*Rogers*).)

6

As the California Supreme Court explained in *Rogers*, "Both federal due process and state law require a trial judge to suspend trial proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial. [Citations.] The court's duty to conduct a competency hearing may arise at any time prior to judgment. [Citation.] Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations." (*Rogers*, *supra*, 39 Cal.4th at p. 847.)

"Evidence that merely raises a suspicion that the defendant lacks present sanity or competence but does not disclose a present inability because of mental illness to participate rationally in the trial is not deemed 'substantial' evidence requiring a competence hearing." (*People v. Deere* (1985) 41 Cal.3d 353, 358, disapproved on other grounds in *People v. Bloom* (1989) 48 Cal.3d 1194, 1228, fn. 9.) "[A] defendant must exhibit more than bizarre, paranoid behavior, strange words . . . ." (*People v. Ramos* (2004) 34 Cal.4th 494, 508.)

"A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial. [Citations.] The failure to declare a doubt and conduct a hearing when there is substantial evidence of incompetence, however, requires reversal of the judgment of conviction." (*Rogers*, *supra*, 39 Cal.4th at p. 847.)

Here, defendant's competency to stand trial was never questioned in the trial court proceedings. Nonetheless, the trial court's determination that defendant should be permitted to represent himself necessarily included this question. (See, e.g., *People v. Walden* (2023) 14 Cal.5th 288, 307 ["A two-part inquiry determines whether a defendant may waive the right to counsel: (1) The defendant must be competent to stand trial, and (2) the trial court must 'satisfy itself' that the waiver of 'constitutional rights is knowing and voluntary' "].)

At that hearing, the trial court granted defendant's request to represent himself after vetting defendant's understanding of the proceedings and his individual rights. Relevant to the arguments on appeal, defendant clearly understood he had been charged with custodial possession of a weapon with a prior strike, even if he disputed whether the People had correctly identified him in the charging document, objected that the proceedings conducted via Zoom violated his right to a public forum, and had dubious theories about how to defend the action. Further, defendant understood the disadvantages associated with representing himself, had previously represented himself, and possessed a paralegal certification.

Thereafter, defendant filed numerous motions with supporting memoranda and affidavits in defense of the action. It is of no moment that many of these motions, and defendant's arguments in support of them at court hearings, were not meritorious.[1] A defendant's lack of legal knowledge does not equate to substantial evidence of incompetence. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1070 [defendant's "missteps in his self-representation" and confusion with courtroom procedures reflects "lack of legal knowledge, not necessarily mental illness or incompetency"]; see also *People v. Butler* (2009) 47 Cal.4th 814, 828 [acknowledging a propria persona defendant may "provide [himself or herself] with inept representation" without running afoul of *Faretta*].) Accordingly, we disagree that defendant's arguments made in support of these legal theories constituted substantial evidence that he was incompetent to stand trial or by extension to represent himself.

Nor do comments made by defendant's cousin at the change of venue hearing alter this determination. Rossignoa advocated for defendant's release and return home so that he could participate in counseling after being in prison for 36 years on a sentence of eight

---

[1] Defendant did have some success, for example, successfully disqualifying a judge for prejudice.

years to life.  Rossignoa denied defendant had possessed a weapon and stated defendant was different than he had been and had a "mental thing that's going on."  These comments do not present substantial evidence that defendant did not have a rational or factual understanding of the proceedings against him or an inability to assist legal counsel.  (*Rogers*, *supra*, 39 Cal.4th at pp. 846-847.)

Finally, we defer to the trial court on these points given that the court had the opportunity to observe defendant's behavior in person over the course of the proceedings and never expressed a doubt regarding his competency.  (*Rogers*, *supra*, 39 Cal.4th at p. 847.)  Accordingly, we deny defendant's claim that substantial evidence supports he was incompetent to stand trial and, by extension, his related claim that this incompetence meant he was also incompetent to represent himself.

DISPOSITION

The judgment is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
MAURO, J.

/s/
BOULWARE EURIE, J.

9